h DECUIR, Judge.
The City of Natchitoches appeals a trial court judgment granting monetary damages to David Carter in compensation for his unlawful arrest, detention and physical as well as verbal abuse by police officers of the City of Natchitoches. For the reasons *187 that follow, we affirm the judgment of the trial court.
FACTS
On October 8, 1995, David Carter was arrested at his home. This was quite shocking in that, for the previous sixty-eight years, he had led an exemplary life. Unfortunately, the same could not be said of Carter’s adult son, Ben. Ben was well known to police officers as a chronic alcohol-related misdemeanant. While Ben is not a party to this suit, his actions are important to its factual development.
On the day his father was arrested, Ben left his parents’ home carrying a loaded Winchester rifle down the city streets. He reached a local bar and spent the day becoming intoxicated. Upon learning of Ben’s actions, Natchitoches Police seized Ben’s rifle at the bar. Throughout the day, Ben and one or more of the officers remained embroiled in a verbal confrontation. Later that evening, Ben returned to his parents’ home and began calling police headquarters demanding that his rifle be returned to him. Ben threatened to do violence to Corporal Dove, an officer with whom there was a history of personal animosity. After numerous calls, Ben challenged Corporal Dove to fight him outside his parents’ home.
In response to this drunken telephone challenge, six police officers and four patrol cars descended on the Carter home. Corporal Dove arrived first and found Ben waiting to fight as promised. As he approached, Ben came toward him with his hand in his pocket. Corporal Dove ordered him to remove his hand from his pocket. Ben | ¡.refused and kept advancing; however, at about that time Corporal Dove’s substantial reinforcements arrived. Ben fled into his parents’ house.
All this occurred at around 7:30 p.m. on a Sunday evening. While events were developing outside, David Carter, who suffered from heart problems and the aftereffects of a stroke, had gone to bed. About the time his son came back into the house, Carter had gotten up and gone to the kitchen to get some medication to help him sleep. Shortly thereafter, the entry door began to open. Carter, being unaware of what had transpired outside, defended his family and property by blocking the door and demanding an explanation. With little or no explanation, the police officers forced- their way into the home knocking a glass from Carter’s hand. They then proceeded to forcibly remove his son from the home. Adding insult to injury, they arrested David Carter for resisting arrest and battery on a police officer, berated and otherwise verbally abused him, pushed him around and ultimately hauled him to the police station. All of these events were traumatic to the elder Carter, having lived his entire life with not so much as a traffic citation. The charges against Carter were never prosecuted.
Ultimately, Carter filed suit against the City of Natchitoches, seeking damages for his unlawful arrest and related mistreatment. The trial court entered judgment against the City of Natchitoches in the amount of $12,500.00. The City of Natchi-toches lodged this appeal.
LACK OF KNOWLEDGE
The City of Natchitoches first contends that the trial court erred in finding that David Carter would have let the police in if he had known why they were there. We disagree.
|3Factual findings of the trial court are subject to the manifest error standard of review. Rosell v. ESCO, 549 So.2d 840 (La.1989). The City of Natchitoches argues that because David Carter continued to resist after he became aware of the officer’s reason for being there the trial court’s conclusion is manifestly erroneous.
After reviewing the record, we note that initially Carter resisted an unexplained invasion of his home which was no doubt upsetting and frightening. We find that the trial court could have reasonably concluded that the aggressive approach uti *188 lized by the police created a state of mind in Carter such that even when he became aware of the reason for the invasion of his home, resistance remained a natural response. We can only speculate as to Carter’s reaction had the police approached in a more proper and circumspect fashion. Accordingly, we find no manifest error in the trial court’s conclusion that Carter only resisted because he was unaware of the reason his home was being overrun.
EXIGENT CIRCUMSTANCES
By its remaining assignments, the City of Natchitoches contends that the trial court erred in fact and law by finding that no exigent circumstance existed to authorize the invasion of Carter’s home without a warrant. We disagree.
In its reasons for judgment the trial court addressed the issue of exigent circumstances as follows:
These officers all knew they were going to make a warrantless arrest at the home of a third person. They all knew where the telephone harasser actually lived and could have secured a warrant and arrested him at their leisure. He presented no clear and present danger; he was drunk at his father’s home calling the police station. The court finds no exigent circumstances to exist justifying invading the home of this elderly couple. The exigent circumstances cases cited by the defendant all dealt with serious felonies. These cases are typified by State v. Finley out of our own circuit, 664 So.2d 775 [(La.App. 3 Cir.1995)] where a bank robber was hiding in the home of a third person but the officers could see him. Exigent circumstances according to our Supreme Court in State v. |4 Hathaway, 411 So.2d 1074 (La.1982) are exceptional circumstances which, when coupled with probable cause, justify an entry into a protected area that without those exceptional circumstances, would be unlawful. Examples are escape of the defendant; avoidance of violent confrontation and destruction of evidence. The exigent circumstances cases cited to the court do not include nonviolent misdemeanors. This defendant was well known to the police. They knew where he lived and probably where he worked and they certainly knew that his crime was telephone harassment of the same officers arresting him. The evidence was clear to the court that the real cause for violating the home of the elder Carters was the anger of one or more of the officers over the drunken and mean-spirited threats of the younger Carter.
The police, unfortunately, over-reacted by sending four police cars and six officers to make a warrantless arrest of a drunken telephone harasser, and then compounded that error by making a warrantless entry into the home of an elderly couple, pushing the old man around, berating him, detaining him, arresting him and taking him to the station house for booking and mirandizing.
In State v. Bearden, 449 So.2d 1109, 1118 (La.App. 5 Cir.), writ denied, 452 So.2d 179 (La.1984), the court discussed warrantless searches and seizures and said:
As observed in United States v. Thompson, 700 F.2d 944, 946 (5th Cir.1983):
[Sjearches conducted without a warrant “are per se unreasonable under the fourth amendment — subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted) (emphasis in original). These exceptions are “jealously and carefully drawn, and there must be a ‘showing by those who seek exemption ... that the exigencies of the situation made [the search] imperative.’ ” Coolidge v. New Hampshire[,] 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (quoting Jones v. United States[,] 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 *189 (1958), and McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948)). The burden is on the government to show that the search falls within one of the exceptional situations. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1969)[(1970)].
15One exception to the warrant requirement is that invoked by “exigent circumstances.” McDonald v. United States, 335 U.S. 451 at 455, 69 S.Ct. 191 at 193[, 93 L.Ed. 153] (1948).
As noted by the U.S. Third Circuit in United States v. Rubin, 474 F.2d 262, 268-269 (3rd Cir.1973):
When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrant-less search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, [citations omitted]; (2) i’easonable belief that the contraband is about to be removed, [citations omitted]; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, [citation omitted]; (4) information indicating the possessors of the contraband are aware that the police are on their trial [sic], [citation omitted]; and (5) the ready destructibility of the contraband and the knowledge “that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.”
See also United States v. Thompson, 700 F.2d 944, 948 (5th Cir.).
In the case before us, the trial court was not convinced by the defendants’ arguments of exigency, nor are we. None of the factors noted above are present. The only alleged evidence in danger of destruction was a box cutter that Ben Carter may or may not have had in his pocket when confronting Corporal Dove. He never brandished this alleged evidence, and it was not readily destructible. Like the trial court we find that the police acted to escalate the situation by personalizing the incident, arriving with an excessive show of force and then utilizing that force. Accordingly, we find no error in the trial court’s finding that no exigent circumstance existed to justify the warrantless entry into David Carter’s home.
1 fiCONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are taxed to the defendant, City of Natchitoches. Pursuant to La.R.S. 13:5112(A), we set forth cost of this proceeding as $2,492.30.
AFFIRMED.